# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 16, 2011        Decided May 15, 2012

No. 11-7039

UNITED STATES OF AMERICA, *EX REL*. MICHAEL L. DAVIS,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-00629)

*Frederick A. Douglas* argued the cause for appellant.
With him on the briefs were *Curtis A. Boykin* and *Alex M.
Chintella*.

*Stacy L. Anderson*, Assistant Attorney General, Office of
the Attorney General for the District of Columbia, argued the
cause for appellee. With her on the brief were *Irvin B.
Nathan*, Attorney General, *Todd S. Kim*, Solicitor General,
and *Donna M. Murasky*, Deputy Solicitor General.

Before: BROWN, GRIFFITH, and KAVANAUGH, *Circuit
Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Michael L. Davis brought this *qui tam*[1] suit alleging the District of Columbia and its schools violated the False Claims Act by submitting a Medicaid reimbursement claim without maintaining adequate supporting documentation. The district court dismissed the case, relying on a precedent of this Court. Because we conclude that the Supreme Court has implicitly overruled that precedent, we reverse.

I

It is common knowledge that Medicaid is a joint federal and state program that funds health care services for certain groups. Less well known is the process by which Medicaid funds are disbursed through local government agencies to care for those in need and the safeguards in place to make sure that the proper amounts of funds are provided for services properly rendered. This case involves allegations of misconduct that undermine some of those safeguards brought by one involved in that process.

The Medical Assistance Administration (MAA), a District agency, administered the District's Medicaid Plan at the time relevant to this suit. The District of Columbia Public Schools (DCPS) is eligible for Medicaid reimbursement for the medical and transportation services it provides to special education students. MAA reimburses DCPS for the estimated costs of these services throughout the year with federal funds from the Centers for Medicare and Medicaid Services. At the end of the year DCPS submits a reimbursement claim to

---

[1] *Qui tam* is short for the Latin phrase "*qui tam pro domino rege quam pro se ipso in hac parte sequitur*," which means "who pursues this action on our Lord the King's behalf as well as his own." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 n.2 (2007).

MAA that sets forth the actual costs of these services. Under the District's Medicaid Plan, MAA must review those claims at least once every two years and determine whether DCPS is owed additional funds or whether the schools must return any overpayment. This annual filing of a reimbursement claim is similar to how a tax return reconciles an individual's withholdings throughout the year with proof of the actual tax owed at year end. Federal regulations require DCPS to maintain financial data based on audit-quality documentation that allows "proper determination of costs payable." 42 C.F.R. § 413.20(a); *see also id.* § 413.24(a). To ensure that the claimed services were actually provided, auditors check for financial documentation and review student files for service-specific medical records or progress notes signed by the actual service provider. Claims lacking "the required service-specific documentation . . . [may] not be part of any cost settlement." Def.'s Mot. to Dismiss Ex. D, at 3.

## II

Because we are reviewing the grant of a motion to dismiss, we accept Davis's version of the facts and draw all inferences in his favor. *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 677 (D.C. Cir. 2009). Davis's firm, Davis & Associates (D&A), prepared the Medicaid reimbursement claims made by DCPS for fiscal years 1995, 1996, and 1997. While D&A was preparing the claim for fiscal year 1998, DCPS replaced the firm with Maximus, Inc. D&A completed work on the claim anyway, but DCPS never submitted it to MAA, filing instead a claim prepared by Maximus. According to Davis, only he had the required documentation supporting the claim, and he never gave it back to DCPS. Upon learning that DCPS had submitted the claim prepared by Maximus, Davis told District officials that the claim lacked supporting documentation and did not represent the full amount owed to

4

DCPS. Despite Davis's warnings, DCPS made no adjustments to its claim at that time.

In May 2000, MAA paid DCPS $10.3 million as a tentative settlement for fiscal year 1998. MAA also hired an auditor to review DCPS's claims for fiscal years 1996-1998. The auditor determined that portions of DCPS's claims should be disallowed because they were not adequately documented, and MAA eventually returned to the federal government $7.6 million that had been overpaid to DCPS for 1998. On August 7, 2002, the Office of the District of Columbia Auditor released to the public a report disclosing that for fiscal years 1996-1998, "$15 million of costs incurred for services rendered to special education students [by DCPS] were disallowed for Medicaid reimbursement due to the absence or unavailability of supporting documentation," and that "documentation of services" had to be "immediately improved." Def.'s Mot. to Dismiss Ex. E, at ii.

On April 4, 2006, Davis filed this action alleging that the District and DCPS had violated the False Claims Act, 31 U.S.C. §§ 3729-3733, by submitting the 1998 reimbursement claim without maintaining adequate supporting documentation. The Act prohibits false or fraudulent claims for payment from the United States, *id.* § 3729(a), and authorizes private individuals to bring suit in the government's name to remedy such fraud, *id.* § 3730(b)(1). These whistleblower plaintiffs (known as "relators") are permitted to share in the government's recovery. *Id.* § 3730(d). The Act authorizes a statutory penalty for each violation, plus treble damages for any actual damages suffered by the government. *See id.* § 3729(a). Davis's amended complaint alleges that the submission of the 1998 reimbursement claim without supporting documentation violates the Act's prohibitions on knowingly presenting a false claim, *id.* § 3729(a)(1), using a false statement to get a

false claim paid, *id.* § 3729(a)(2), and conspiring to get a false claim paid, *id.* § 3729(a)(3). Davis asserts that submitting a claim for Medicaid reimbursement that lacks the supporting documentation called for by regulation defrauds the United States because the government would not have knowingly paid such a claim. Davis does not allege, however, that any claimed services were not provided or that any costs were exaggerated.

The 1986 version of the Act, which applies to this case, bars suits "based upon the public disclosure of allegations or transactions . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A) (2006) (amended 2010). An original source is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." *Id.* § 3730(e)(4)(B). In short, if a *qui tam* suit is "based upon" a "public disclosure," the suit is barred unless the relator is an "original source."

On December 23, 2008, the district court granted in part the defendants' motion to dismiss Davis's *qui tam* action. *United States ex rel. Davis v. District of Columbia* (*Davis I*), 591 F. Supp. 2d 30 (D.D.C. 2008). The court dismissed DCPS as a defendant because D.C. law provides that it cannot be sued directly. *Id.* at 40. The court also dismissed Davis's treble damages and conspiracy claims because he had not alleged actual damage to the government. *Id.* at 39-40. The court rejected, however, the District's challenge to its subject matter jurisdiction, holding that even though the Auditor's report had publicly disclosed the alleged fraud, Davis was an original source. *Id.* at 36-37. The parties proceeded with

discovery and Davis filed an amended complaint. Davis then moved for summary judgment and the District moved again to dismiss for lack of subject matter jurisdiction.

This time, the district court agreed and concluded Davis was not an original source under our decision in *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675 (D.C. Cir. 1997). *United States ex rel. Davis v. District of Columbia* (*Davis II*), 773 F. Supp. 2d 21, 32 (D.D.C. 2011). In *Findley*, we held that a relator must provide his information to the government not only prior to filing suit but "prior to any public disclosure." 105 F.3d at 690. Because there was no evidence that Davis notified the federal government of the alleged fraud before the 2002 Auditor's report, the court concluded it was without jurisdiction to hear his claim. *Davis II*, 773 F. Supp. 2d at 33-34.

Davis timely appealed both the district court's conclusion that it lacked subject matter jurisdiction and its dismissal of his claims for treble damages and conspiracy. We take jurisdiction under 28 U.S.C. § 1291.

III

A

Davis first argues that his suit is not "based upon" the August 2002 Auditor's report. We have explained that a suit is "based upon" publicly disclosed "allegations or transactions" when the allegations in the complaint are "substantially similar" to those in the public domain. *Findley*, 105 F.3d at 682. This rule prevents suits by those other than an "original source" when the government already has enough information "to investigate the case and to make a decision whether to prosecute" or where the information "could at least

have alerted law-enforcement authorities to the likelihood of wrongdoing." *U.S. ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1377 (D.C. Cir. 1981)).

The 2002 Auditor's report disclosed that, for fiscal years 1996-1998, DCPS was not reimbursed for $15 million worth of services provided to special education students but not adequately documented. Def.'s Mot. to Dismiss Ex. E, at ii. The report revealed to the public the "allegation" that DCPS did not have adequate supporting documentation for its 1998 Medicaid reimbursement claim and provided ample reason for the government to investigate further. *See Springfield Terminal*, 14 F.3d at 654. Davis contends that his allegation is more specific than what was in the Auditor's report, and that is true. He points out the 1998 claim lacked any documentation while the Auditor's report found some for three years, just not enough. But providing "more specific details about what happened" does not change the fact that Davis's allegation is substantially similar to and therefore "based upon" the publicly disclosed allegations in the Auditor's report. *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999).

Davis's claim can proceed only if he is an "original source."

B

The District argues that Davis is not an original source because he did not prove he voluntarily provided his information to the government before filing suit, let alone that

he did so before *Findley*'s public-disclosure deadline.[2] The district court found that he had provided his information to the government before filing suit, relying on two letters Davis received from federal officials which acknowledged that he had written them alleging "Medicaid fraud" and "diversion of Medicare funds." *Davis II*, 773 F. Supp. 2d at 32. At oral argument, we questioned whether these letters, vague as they are, were sufficient. After argument, Davis provided us with other letters he sent to the government and an affidavit asserting their authenticity.[3] Most relevant, in a letter dated August 19, 2004, he informed the Inspector General of the U.S. Department of Health & Human Services that the District and DCPS "do not have in their possession documentation to support a drawdown of federal medicaid funds for [1996-1998]." Appellant's Mot. to Suppl. R., Attach. at 1. This letter removed any concern we had about whether Davis had "provided the information to the Government" before filing suit.

Relying upon our decision in *Findley*, the district court dismissed Davis's suit because he failed to provide his information to the government prior to the publication of the Auditor's report. *Davis II*, 773 F. Supp. 2d at 33-34. Davis argues that the Supreme Court eliminated this requirement in

---

[2] The District concedes on appeal that Davis had direct and independent knowledge that the 1998 claim for Medicaid reimbursement lacked documentation. Appellee's Br. 34.

[3] Although we normally do not consider evidence presented for the first time on appeal, we have discretion to make "limited exceptions to this rule when 'injustice might otherwise result.'" *In re AOV Indus., Inc.*, 797 F.2d 1004, 1012 (D.C. Cir. 1986) (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)). Because these new documents go "to the heart of the contested issue, it would be inconsistent with this court's own equitable obligations . . . to pretend that they do not exist." *Id.* at 1013.

*Rockwell International Corp. v. United States*, 549 U.S. 457 (2007). The district court acknowledged that *Rockwell* raised doubts about *Findley* but concluded that it would not "lightly infer an abrogation of settled precedent." *Davis II*, 773 F. Supp. 2d at 33. Although we have previously expressed doubt about whether this part of *Findley* survived *Rockwell*, *see United States ex rel. Davis v. District of Columbia*, 413 F. App'x 308, 310 (D.C. Cir. 2011) (noting this concern but dismissing a related suit by Davis on different grounds), we have not yet had occasion to address the issue squarely. Today we do, and we agree with Davis.

*Findley* established this requirement based on its reading of the statute and a resulting policy concern. First, interpreting § 3730(e)(4)'s text, the court concluded that "the allegations" referred to in subparagraph (B) were the publicly disclosed "allegations or transactions" in subparagraph (A), "since those are the only allegations mentioned at all in section 3730(e)(4)." *Findley*, 105 F.3d at 690. From this, the court determined that the word "information" in both subparagraphs referred to the information "on which the [publicly disclosed] allegations are based." *Id.* (alteration in original). Under this reading, the information an original source must provide to the government is the information underlying the publicly disclosed allegations.

*Findley* then turned to the question at issue here: *when* must the relator provide this information to the government? Although the text seems to impose a clear deadline of "before filing an action," *Findley* held that "the only reading of the statute that accounts for the requirement that an 'original source' voluntarily provide information to the government before filing suit, and Congress' decision to use the term 'original source' . . . is one that requires an original source to provide the information to the government prior to any public

disclosure." *Id.* at 691. The court offered two primary reasons for this reading. First, it would be odd to call someone an "original source" of information if the government had already obtained the relevant information from the public. *See id.* Second, and more centrally, *Findley* surmised that "[o]nce the information has been publicly disclosed . . . there is little need for the incentive provided by a *qui tam* action." *Id.* A relator adds little value, so the thinking goes, by repeating what is already publicly available and known to the government.

In *Rockwell*, the Supreme Court rejected *Findley*'s reading of what information a relator must provide the government, concluding that the word "information" in § 3730(e)(4) refers to "the information on which the *relator's allegations* are based[, not] the information on which the *publicly disclosed allegations* that triggered the public-disclosure bar are based." 549 U.S. at 470. With the wrong "information" in mind, *Findley*'s argument that the information must be provided to the government not only before suit is filed but before a public disclosure is made simply unravels. *Findley*'s concern about why Congress used the term "original source" is answered: The relator can be an "original source" to the government of his information even if the publicly disclosed information came from someone else.

And *Findley*'s judgment that "[o]nce the information has been publicly disclosed . . . there is little need for the incentive provided by a *qui tam* action," 105 F.3d at 691, no longer follows because *Rockwell* changed the premise. We now understand that the "information" provided is the relator's. Importantly, the relator's information can be different and more valuable to the government than the information underlying the public disclosure, which might be nothing more than speculation or rumors. *See Rockwell*, 549

U.S. at 472. The relator may have an eyewitness account or important documents supporting the public allegation, but not available from any other source, which could aid the government. *Findley*'s reading of the statute assumed the relator could provide nothing new after a public disclosure. *Rockwell* rejected that view. Given this, it is apparent that *Findley*'s categorical rule bars productive suits. *See United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 24-25 (1st Cir. 2009) (concluding that *Rockwell* "substantially undercuts" *Findley* and shows that *Findley* "has the potential to bar productive suits"). *Findley*'s requirement no longer has any textual basis, and the policy judgment upon which it relied contradicts *Rockwell*'s rationale.

Applying the 1986 version of the Act, we will no longer require that a relator provide information to the government prior to any public disclosure of allegations substantially similar to the relator's and will instead enforce only the text's deadline of "before filing an action."[4] Because Davis satisfies

---

[4] Although *Rockwell* corrected *Findley*'s tendency to bar some productive suits, the 1986 Act's approach is itself imperfect because it allows suits in which the relator's information does in fact mirror the publicly disclosed information, the situation *Findley* assumed would always apply. Congress has since addressed this problem by amending the statute to provide incentives to only those relators whose information adds value. The Act now defines an "original source" as

> an individual who either (i) prior to a public disclosure . . . has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

the requirements of § 3730(e)(4)(B), we conclude that he is an original source and that the district court has jurisdiction over his claims.

IV

Davis also argues that the district court wrongly dismissed his claims for treble damages and conspiracy on the ground that he failed to allege actual damage to the United States. He argues that the entire amount the federal government paid to DCPS in 1998 constitutes damages because the government would not have paid DCPS anything had it known there was no documentation for its reimbursement claim. We conclude, however, that the district court was right to find that the government suffered no damages.

The False Claims Act imposes two types of liability:

First, a defendant who submits a false claim . . . is liable for civil penalties regardless of whether the government shows that the submission of that claim caused the government damages. Second, the defendant is liable for "3 times the amount of damages which the Government sustains because of the act of [the defendant]."

*United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1277-78 (D.C. Cir. 2010) (quoting 31 U.S.C. § 3729(a))

---

31 U.S.C. § 3730(e)(4)(B) (Supp. 2010). Thus, as the district court explained, the Act now "allows a relator to proceed if he *either* meets the *Findley* pre-public disclosure notification requirement, *or* if he possesses knowledge independent of the public disclosure that materially adds to the public disclosure, and he provides the information to the Government prior to filing suit." *Davis II*, 773 F. Supp. 2d at 33 n.9.

(citation omitted). Our decision in *Science Applications* sets forth the proper framework for determining damages in *qui tam* actions. There, a contractor who had agreed to provide a federal agency with expert advice certified it had no conflicts of interest. The contractor provided the advice but failed to disclose several conflicts. *Id.* at 1261-62. Like Davis does here, the government sought damages equal to the full amount it had paid the contractor and relied on evidence showing it would not have paid the contractor anything had it known of the conflicts. But we explained that this evidence only proved causation, not damages, because False Claims Act damages are meant to "put[] the government in the same position as it would have been if the defendant's claims had not been false." *Id.* at 1278. Thus, "[t]o establish damages, the government must show not only that the defendant's false claims caused the government to make payments that it would have otherwise withheld, but also that the performance the government received was worth less than what it believed it had purchased." *Id.* at 1279. Although the government was not entitled to recover all of its payments, we concluded that a jury could find that the value of the contractor's performance "was compromised by the appearance of bias created by the company's failure to live up to its contractual conflict of interest obligations." *Id.* at 1278. We therefore instructed that the proper measure of damages was the difference in value between "services tainted by potential conflict" and the untainted services promised. *Id.* at 1280.

Under the Medicaid program, the federal government pays for specified services to be provided to eligible recipients. In this case, Davis does not allege that any services paid for were not provided. The sole defect Davis claims is the failure to maintain documentation for those services. Unlike the contractor's undisclosed conflicts in *Science Applications*, the defect in this case in no way calls into

question the value of the medical care provided by DCPS. The purpose of maintaining documentation is to ensure that the government pays only for services actually rendered. Because all agree that the services paid for were provided, the maintenance of documents to prove that they were has no independent monetary value. This is the rare case in which there is no allegation that what the "government received was worth less than what it believed it had purchased." *Id.* at 1279; *cf. United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 200 (D.C. Cir. 1995) (finding actual damage because, unlike here, the defendant's false claims had caused the government to pay for "useless goods"). A server's failure to bring a receipt after dinner causes no harm when you know you've been properly charged. The same is true here: The government got what it paid for and there are no damages. *Cf. Ab-Tech Constr., Inc. v. United States*, 31 Fed. Cl. 429, 434 (1994); *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966). If Davis proves his claims he may still be eligible to share in the statutory penalties assessed against the District.

Finally, the District invokes the Act's six-year statute of limitations to bar some of Davis's claims. *See* 31 U.S.C. § 3731(b)(1). Because the district court had no occasion to address this question, we leave it the opportunity to do so in the first instance on remand.

V

For the foregoing reasons, the district court's order dismissing the case for lack of jurisdiction is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*